UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                        CRIMINAL NO. 24-20434

vs.                                       HON. LAURIE J. MICHELSON

DILANJAN MILLER,

      Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

### INTRODUCTION

Dilanjan Miller stole from his co-workers who entrusted him with their hard-earned wages. Miller spent the money he stole on selfish pleasures such as airline flights, lodging, and rental cars across the country. Because of his egregious conduct, his criminal history, and the need to deter others who are similarly situated in a position of trust, the government requests that this Court impose a sentence within the guideline range of 8-11 months.

### BACKGROUND

Steelworkers (USW), AFL-CIO, Local 2513, represented approximately 30 machine operators, inspectors, stock chasers, and rackers employed at Marsh Plating in Ypsilanti, Michigan. Miller was elected President of USW Local 2513 in April 2018. He also assumed all financial duties of USW Local 2513 as acting

1

Financial Secretary and Treasurer. Miller served as Local 2513 President and acted in the financial positions until May 11, 2021, when he left his employment with Marsh Plating.

Miller's duties and responsibilities as President included presiding over all meetings of the local union and countersigning union checks. As Financial Secretary and Treasurer, his responsibilities included: (1) receiving and depositing all monies due to the union; (2) signing all checks to be countersigned by the President and Financial Secretary; (3) keeping regular and correct accounts of all money received and paid by the union; and (4) making detailed financial reports at least once a month at each local union meeting covering the receipts and expenditures of all funds.

USW Local 2513 held one checking account with the Bank of Ann Arbor from August 30, 2005, until it was closed by the USW IU on May 28, 2021. Around October 2018, Miller obtained a VISA debit card linked to the Bank of Ann Arbor checking account.

While President, Financial Secretary, and Treasurer of the union, Miller fraudulently obtained $47,347 of union funds by: (1) issuing 38 unauthorized checks to himself and forging the signature of the second signatory on 20 of those checks; (2) issuing 4 unauthorized checks made payable to a family member; and (3) making 2 unauthorized cash withdrawals from the union's bank account.

Miller also used the USW Local 2513 VISA debit card as his own personal debit card by making at least 184 unauthorized purchases totaling $11,259.84. Miller obtained the VISA card without the knowledge and approval of the union.

All of Miller's purchases using his union's funds were unauthorized and outside of normal union expenses. In total, Miller stole $58,696.84 from his fellow union members.

## SENTENCING GUIDELINE CALCULATIONS

On October 7, 2024, Miller pleaded guilty to bank fraud with a negotiated plea agreement. (ECF No. 19). The Probation Department calculated a guideline range of 8-14 months. (PSR ¶ 63). Miller's plea agreement contains a cap at the midpoint of the guideline range as determined by the Court. (ECF No. 19, PageID.66). Accordingly, the resulting guideline range is 8-11 months.

## APPLICATION OF 18 U.S.C. § 3553

Title 18, United States Code, Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. In order to determine the particular sentence to impose, this Court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). An application of the sentencing factors to this defendant justifies a sentence within the guideline range.

### A. The Guidelines are the Lodestar in Sentencing.

Although the sentencing guidelines are no longer mandatory, they are guiding and instructive. The guidelines are the "starting point" and "initial benchmark" for determining an appropriate sentence. *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (quoting *United States v. Bistline*, 665 F.3d 758, 761 (6th Cir. 2012) and *Gall v. United States*, 552 U.S. 38, 49 (2007)). The Guidelines are not only the starting point for most federal sentencing proceedings but also the loadstar. *Molina-Marinez v. United States*, 578 U.S. 189, 200 (2016). So, in the instant case, the applicable sentencing range should guide the Court to a sentence of imprisonment between eight and eleven months.

### B. The Nature and Seriousness of the Offense and the History and Characteristics of the Defendant

#### 1. Nature and Seriousness of the Offense

The nature and circumstances of Miller's repeated offenses are serious. Miller was an elected officer of a union whose members relied upon Miller to handle their hard-earned money without the influence of self-interest. Instead, Miller allowed his judgment to be fundamentally compromised by the lure of cash. Miller's positions gave him power and access to a piggy bank. Instead of using his power to protect the bank, he allowed himself to be corrupted by the power. Over the span of several years, he took over $58,696 from his union. So, Miller stole

from his union brothers and sisters and spent the money on himself instead of on items and purposes that would have benefitted his fellow union members. As just a few samples illustrate, Miller vacationed and gave himself the life he wanted with the dues money of others instead of with his own wages:

Miller's personal retail store purchases included:

| | | |
|---|---|---|
| 11/05/2018 | Jordan Jewelers (Dearborn, MI) | $204.25 |
| 11/06/2018 | Footaction (Dearborn, MI) | $413.40 |
| 12/11/2018 | Footaction (Las Negas, NV) | $238.15 |
| 02/11/2019 | Finish Line (Dearborn, MI) | $201.40 |
| 02/11/2019 | Foot Locker (Dearborn, MI) | $201.40 |

Miller's personal vehicle rentals included:

| | | |
|---|---|---|
| 02/26/2019 | Dollar Car (West Palm Beach, FL) | $411.48 |
| 02/25/2020 | Dollar Car (West Palm Beach, FL) | $551.67 |
| 11/18/2020 | Dollar Car (Atlanta, GA) | $537.27 |
| 02/23/2021 | Dollar Car (Ft. Lauderdale, FL) | $490.74 |

Miller's personal airfare and flight expenses during personal travel included:

| | | |
|---|---|---|
| 02/15/2019 | Spirit Airlines (DTW to Palm Beach, FL) | $345.58 |
| 08/14/2020 | Spirit Airlines (DTW to Las Vegas, NV) | $39.70 |
| 10/16/2020 | Spirit Airlines (DTW to Atlanta, GA) | $141.58 |
| 01/19/2021 | Spirit Airlines (DTW to Ft. Lauderdale, FL) | $132.80 |

02/02/2021  Spirit Airlines (DTW to Ft. Lauderdale, FL) $49.98

Miller's lodging accommodations included:

| Date | Place | Amount |
|---|---|---|
| 06/24/2020 | Rodeway Inn (Romulus, MI) | $67.29 |
| 08/24/2020 | Apple Tree Inn (Saginaw, MI) | $72.15 |
| 09/30/2020 | AirBNB (Mrytle Beach, SC) | $241.02 |
| 04/26/2021 | Apple Tree Inn (Saginaw, MI) | $144.30 |

Miller's personal fuel, meal, and bar purchases included:

| Date | Place | Amount |
|---|---|---|
| 08/28/2020 | Motor City Casino (Detroit, MI) | $104.95 |
| 09/21/2020 | Pantheion Lounge (Dearborn, MI) | $70.58 |
| 09/23/2020 | Pantheion Lounge (Dearborn, MI) | $86.45 |
| 04/21/2021 | Opyum Lounge (Detroit, MI) | $75.85 |

Miller's criminal activity was not the result of a spontaneous decision borne out of financial distress; rather, his law breaking was generated and prolonged by daily and hourly decisions, and it was within his sole power to cease his criminal activity and disloyalty at any point.

Undeniably, the harm Miller caused is greater than the financial loss to his union. Miller has cast another stain on unions and undermined the trust of its members and the general public.

2. Characteristics of the Defendant

Miller was provided the familial support and virtues necessary to live a law-abiding life and to understand the consequences of choosing not to do so. (PSR ¶¶ 38-39). His support and strict religious upbringing, (PSR ¶ 39), gave him the tools to live a life free of encounters with the justice system. However, his life was infused with serious criminal activity when he was a teenager.

When he was sixteen, Miller was in a car with five other young men when they shot and killed Nicholas Green in Saginaw, Michigan, in July 2004. The facts surrounding Green's murder are described in the Michigan Court of Appeals opinion affirming the conviction of the driver and in Judge Marianne Battani's opinion denying the driver's petition for a writ of habeas corpus. *See People v. Bond*, No. 270091, 2007 WL 4208971 at *1 (Mich. Ct. App. Nov. 29, 2007); *Bond v. Rapelje*, No. 08-13253, 2011 WL 1103633 at *2-3 (E.D. Mich. March 23, 2011).

On July 18, 2004, a young man, Omar McKnight, was shot and killed in Saginaw. *Rapelje*, 2011 WL 1103633 at *2. The next day, the victim's best friend (Kevin Bond), the victim's brother, Dilanjan Miller, and several other young men drove through Saginaw stating they would start shooting if they saw someone responsible for McKnight's death. *Rapelje*, 2011 WL 1103633 at *2. Miller sat next to the driver (Kevin Bond) and heard the driver say, "'if we see anybody, we [are] going to shoot them because they killed Omar.'" *Bond*, 2007 WL 4208971 at

7

*3. Bond, Miller, and the other passengers were affiliated with one gang in Saginaw and were smoking marijuana as they drove armed and intending to shoot. *Rapelje*, 2011 WL 1103633 at *2.

As they drove by a group of young men in the rival gang, the driver told Miller to lie down as he shot out the passenger side window and the rear window. *Bond*, 2007 WL 4208971 at *3; *Rapelje*, 2011 WL 1103633 at *2. Another passenger in the car also fired shots from the car. Nicholas Green died as a result of the shots fired into his aorta, lungs, and liver. *Bond*, 2007 WL 4208971 at *3; *Rapelje*, 2011 WL 1103633 at *3. Two other young men were injured by the gunfire. *Rapelje*, 2011 WL 1103633 at *3.

The driver, Kevin Bond, was prosecuted and convicted of first-degree premediated murder, assault with intent to commit murder, carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm during the commission of a felony. Prior to Bond's trial, Miller was given immunity for his testimony, and his videotaped interview was presented by the prosecution. *Rapelje*, 2011 WL 1103633 at *2; Bond, 2007 WL 4208971 at *1.

According to the Presentence Investigation Report, Miller's involvement in the murder resulted in convictions for Fleeing a Police Officer and Carrying a Concealed Weapon. (PSR ¶ 40). He was sentenced to 90 days in juvenile detention. (PSR ¶ 40).

Miller has not reverted to violent crime since this horrific murder, and his testimony led to the conviction of a violent offender. However, unfortunately, he has not been able to control his penchant for criminal activity. He continues to make deliberate choices to engage in criminal activity that harms others. His calculated choice to revert to criminal activity, after a traumatic teenage encounter with violent crime and the criminal justice system, speaks loudly about his character and justifies a sentence within the applicable guideline range.

### C.   Respect for the Law and Just Punishment

The Court's sentence for Miller's crimes needs to promote respect for the law and impose just punishment for his misconduct. Miller was a trusted union official, and he intentionally breached the trust of union members. His coworkers believed that their President was protecting their money, not stealing it. Unquestionably, his abuse of the trust inherent in his positions harmed the union and the labor movement generally. This Court should impose a guidelines prison sentence for his wrongdoing in order to vindicate the rule of law and repeated criminal conduct.

### D.   Deterrence

"Sentences influence behavior," *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) (*quoting United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007)), and this is why deterrence is such an important sentencing factor. Millions of union members look to and depend on their leadership to act in the best

interests of the membership. Current and future leaders must understand that substantial abuses of this trust will be severely punished. Union members depend on the leadership of their unions to act zealously in the best interests of the membership, which includes managing and using the dues money of union members with integrity and only for lawful purposes approved of by the membership. Given the importance of the financial integrity of labor unions, general deterrence is an important component of this Court's sentence. Our union leaders must conduct themselves at the highest level of honesty, integrity, and transparency. Senior union officials need to hear loud and clear that labor corruption, and the abuse of the trust placed in them by union members and their families, will be punished.

Union corruption can be difficult to expose largely due to a lifelong brother/sisterhood amongst its members. In a series of prosecutions in this district, our judicial system is sending a message that corruption by labor union leaders, when exposed, will be punished. This Court should continue to broadcast this message.

Due to his criminal history, there is also some need for specific deterrence for Miller. His prior experience with the criminal justice system was not sufficient to persuade him to lead a fully law-abiding life. In order to prevent further recidivism, this Court should impose a sentence within the guideline range.

### E. A Sentence within the Guidelines will Help Avoid Disparities.

The sentencing guidelines help courts avoid disparities of similarly situated defendants. In other words, "[t]he Guidelines exist to help ensure that similarly-situated defendants are punished similarly." *United States v. Vassar*, 346 Fed.Appx. 17, 29 (6th Cir. 2009) (citing *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006)). Disparities are at their "ebb" when courts impose sentences within the guideline range. *Boscarino*, 437 F.3d at 638. In contrast, the "more out-of-range" the sentence, "the more disparity there will be." *Boscarino*, 437 F.3d at 638.

The PSR notes that the average sentence for bank fraud at an offense level of 11 and criminal history category I is 5 months; however, this Court should be mindful that Miller has a criminal history not routinely present in bank fraud cases. Accordingly, this Court should sentence Miller within the guideline range to help ensure appropriate sentences for fiduciaries who steal the money entrusted to them by their colleagues after criminal activity not accounted for in the guideline range.

## CONCLUSION

Based on all of the § 3553(a) factors, the Court should impose a sentence at the midpoint of the guideline range.

        Respectfully submitted,

        JULIE A. BECK
        Acting United States Attorney

        *s/Sarah Resnick Cohen*
        SARAH RESNICK COHEN
        Assistant U.S. Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI 48226
        sarah.cohen@usdoj.gov
        (313) 226-9637

Dated:  April 22, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to:

        Allison L. Kriger
        Attorney for Defendant

        *s/Sarah Resnick Cohen*
        SARAH RESNICK COHEN
        Assistant U.S. Attorney